# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CLEARPOINT BUSINESS RESOURCES, INC., *et al.*,[1] | Case No. 10-12037 |
| Debtors. | (Joint Administration Requested) |

## DEBTORS APPLICATION FOR AN INTERIM ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING THE PREPETITION LENDER ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

ClearPoint Business Resources, Inc., and its affiliated debtor, ClearPoint Resources, Inc. (collectively, the "Debtors" or "ClearPoint"), file this Application (the "Application") pursuant to Sections 105(a), 361, 362 and 363 of title 11 of 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules") for entry of an interim consent order (the "Interim Order")[2], substantially in the form annexed hereto as Exhibit "A", (I) authorizing use of cash collateral; (II) granting the prepetition lender, ComVest Capital, LLC (the "Prepetition Lender" or "ComVest") adequate protection; (III) scheduling a final hearing (the "Final Hearing"); and (IV) granting related relief, and respectfully state as follows:

---

[1] The Debtors, along with the last four digits of their federal tax identification numbers, are: ClearPoint Business Resources, Inc. (4371) and ClearPoint Resources, Inc. (9869). The Debtors' mailing address for purposes of these cases is P.O. Box 3400. Easton, PA. 18045.

[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the proposed Interim Order.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. 327(a). This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are Sections 105(a), 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local Rule 4001-2.

## II. SUMMARY OF THE RELIEF REQUESTED

3. Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a))(ii), a summary of the relevant provisions of the Interim Order is as follows:

   a. **Name of Each Entity with an Interest in Cash Collateral.** ComVest pursuant to (i) the Amended and Restated Revolving Credit Agreement dated August 14, 2009, by and between the Prepetition Lender and CPBR, as amended by the Letter Amendment dated October 1, 2009, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date (collectively, the "Loan Agreement", copies of which are included in the Exhibit Supplement to this Application filed.

   b. **Use of Cash Collateral.** Subject to the terms of the proposed Interim Order, the Debtors may use Cash Collateral during the Interim Period for its postpetition operational and restructuring obligations.

   c. **Adequate Protection.** The Debtors' agreement to use Cash Collateral postpetition also provides for the granting of adequate protection to the Prepetition Lender as follows (collectively, "Adequate Protection"):

      i. Adequate Protection Liens. To the extent there is a diminution in the value of the Prepetition Lenders' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay

(including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Lender seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Prepetition Lender, is granted replacement liens (the "Replacement Liens") in the Prepetition Collateral, which Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or the Prepetition Lender of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the Carve-Out, and the Permitted Liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such Replacement Liens shall cover assets, interest, and proceeds of the Debtors that are or would be collateral under the Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents (with the exception of the Avoidance Actions and proceeds thereof).

ii. Administrative Claim. The Prepetition Lender is hereby granted in each of the Debtors' Cases an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations, to the extent that the Replacement Liens do not adequately protect the diminution in the value of the Prepetition Lenders' interests in the Collateral from the Petition Date, and such Administrative Claim shall be junior and subordinate only to the Carve-Out and any Permitted Liens. The Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (with the exception of the Avoidance Actions and proceeds thereof).

iii. Access. In accordance with the terms of the Existing Loan Agreement, the Prepetition Lender shall be afforded continued reporting as to Collateral amounts and reasonable access to the Collateral and the Debtors' business premises, during normal business hours, for purposes of verifying the Debtors' compliance with the terms of this Order as it pertains to the Prepetition Lender.

iv. Allowance of Claims. The claims arising from or in connection with the Prepetition Obligations are hereby deemed "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

v. Right to Credit Bid. The Prepetition Lender shall have the right to "credit bid" the allowed amount of the Prepetition Lender's claims during any sale of all or substantially all of the Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code

or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

4. Additionally, in accordance with the Local Rule 4001-2(a))(ii) the Debtors highlight the following:

   a. **Cross-collateralization Protection.** The Interim Order does not provide cross-collateralization protection to the Prepetition Lender.

   b. **Determination of Validity, Enforceability, Priority and Amount of the Prepetition Liens.** The Interim Order does not contain an acknowledgement by the Debtors of the validity, enforceability, priority or amount of any prepetition liens of the Prepetition Lender.

   c. **Waiver of Bankruptcy Code Section 506(c).** The Interim Order does not provide a waiver of Bankruptcy Code Section 506(c). However, Paragraph 16 of the Interim Order contemplates that the Final Order will provide a limited waiver of Bankruptcy Code Section 506(c).

   d. **Liens on Avoidance Actions.** The Interim Order does not provide a lien on avoidance actions (causes of action arising under sections 544, 545, 547, 548 or 549 of the Bankruptcy Code).

   e. **Deemed Postpetition Debt.** The Interim Order does not deem any prepetition debt to be postpetition debt or seek the use of postpetition loans.

   f. **Disparate Treatment of Professionals.** The Interim Order does not provide for disparate treatment of professionals retained by any official committee of unsecured creditors from those retained by the Debtors with respect to any fee carve-out.

# III. BACKGROUND

5. As detailed more fully in the Declaration of Christine Doelp, filed contemporaneously with these bankruptcy petitions, on June 20, 2008, ClearPoint entered into a Revolving Credit and Term Loan Agreement (the "Loan Agreement") ComVest. Pursuant to the Loan Agreement, ComVest extended to the Company: (i) a secured revolving credit facility for up to $3 million (the "Revolver") and (ii) a term loan (the "Term Loan" and, together with the Revolver, the "Loans") in the principal amount of $9 million, of which $1 million was treated as an original issue discount, and the Company received $8 million in respect of the Term Loan.

6. The amounts due under the Revolver bore interest at a rate per annum equal to the greater of: (i) the prime rate of interest announced by Citibank, N.A. plus 2.25% or (ii) 7.25%. The Loans provided that the stated interest rates were subject to increase by 500 basis points during the continuance of an event of default under the Loan Agreement. Amounts due under the Loans were payable monthly, beginning July 1, 2008.

7. During the quarter ended June 30, 2009, the Company was in default on principal installment payments due for February, 2009 through June, 2009 under the Term Loan in the aggregate amount of $701,822. In addition, the Company was in default on principal installment payments due for July, 2009 under the Term Loan in the aggregate amount of $439,357 and was in default on interest payments due for July, 2009 in the amount of $61,295. The Company was also in default on interest payments due for July, 2009 under the Revolver in the amount of $18,098. The failure to make such payments constituted events of default under the Loan Agreement. The Company was obligated to pay a default interest rate of 500 basis points over the prevailing rate, which difference between the default rate and the prevailing rate was not paid. On May 19, 2009, ComVest executed a waiver letter (the Term Loan Waiver") related to

the Loan Agreement for the periods of February through April, 2009. Pursuant to the Term Loan Waiver, ComVest waived the foregoing defaults, provided that ComVest reserved the right to collect at a later time, but no later than the maturity date of the Term Loan under the Loan Agreement, the increased interest ComVest was permitted to charge during the continuance of such defaults. On August 14, 2009, ComVest executed a waiver letter, which waived the Company's defaults under the Loan Agreement through August 14, 2009, provided the Company pays the difference between the increased interest rate charged in connection with the defaults and the regular interest rate no later than March 31, 2010.

8. On August 14, 2009, the Company entered into the Amended and Restated Revolving Credit Agreement with ComVest (the "Amended Loan Agreement"), which amended and restated the Loan Agreement, dated June 20, 2008. Pursuant to the Amended Loan Agreement, the maximum availability under the secured revolving credit facility (the "Amended Revolver") was increased from $3,000,000 to $10,500,000 million (the "Amended Revolver Maximum"). The remaining outstanding principal balances of $2,900,000 under the revolving credit note and $7,100,000 under the term loan extended by ComVest pursuant to the Original Loan Agreement were paid in full by an advance from the Amended Revolver, and the term note was cancelled.

9. In connection with the Amended Loan Agreement, each of Messrs. Michael Traina, the Company's then Chairman of the Board of Directors and Chief Executive Officer, and John Phillips, the Company's then Chief Financial Officer, reaffirmed their respective Validity Guaranties previously given to ComVest on June 20, 2008 (the "Validity Guaranty") by executing a Reaffirmation of Validity Guaranties, dated August 14, 2009 (the "Reaffirmation of Validity Guaranties"). The Validity Guaranty provides that each officer will not, intentionally or

through conduct constituting gross negligence, and the Company will not, through intentional acts of either Mr. Traina or Mr. Phillips or through conduct constituting gross negligence by each such officer, provide inaccurate or misleading information to ComVest, conceal any information required to be delivered to ComVest or fail to cause the Collateral to be delivered to ComVest when required or otherwise take any action that constitutes fraud. In the event of a breach or violation of the obligations of Messrs. Traina or Phillips under the Validity Guaranty, the officer must indemnify and hold ComVest harmless from any loss or damage resulting from such breach or violation.

10. On February 9, 2010, the Company received a notice of default from ComVest in connection with the Amended Loan Agreement. The Company defaulted on its obligations under the Amended Loan Agreement as a result of: (i) its failure to pay approximately $108,000 of accrued interest which was due and payable on February 1, 2010; (ii) its failure to pay a $60,000 installment of a certain modification fee which was due and payable on January 1, 2010; and (iii) the entry of a judgment against the Company related to the lawsuit filed by AICCO, Inc. and delivery of a judgment note in favor of AICCO, Inc. in the amount of approximately $195,330.

11. As of the Petition Date, ClearPoint's total outstanding balance on the ComVest debt is not less than $12,655,196, including, without limitation, principal in the amount of approximately $11,041,049, interest in the amount of $1,614,147, plus all costs, expenses, fees (including attorneys' fees and legal expenses) and other charges (collectively, the "Prepetition Obligations").

## IV. USE OF CASH COLLATERAL

### A. The Debtors Need For Use Of Cash Collateral

12. The Debtors have determined, in the exercise of their business judgment and with the advice of their counsel, that it is in their estates' best interest that their collateral be used to preserve the value of the estates. As explained above, all of the Debtors' available cash is subject to the prepetition liens of the Prepetition Lender and, therefore, constitutes cash collateral. Accordingly, the Debtors require the consent of the Prepetition Lender (or an order of the Bankruptcy Court over the Prepetition Lender's objection) to use cash collateral; which consent would not be forthcoming absent the provisions contained in the proposed Interim Order.

### B. Use Of Cash Collateral Is Warranted

13. As set forth above, the Prepetition Lenders have consented to the Debtors' use of Cash Collateral under the terms and conditions of the proposed Interim Order. Thus, the Debtors' use of Cash Collateral is within Bankruptcy Code Section 363(c)(2)(A). Absent the use of Cash Collateral, the Debtors would be unable to preserve the value of the Prepetition Lender's collateral. The Prepetition Lender will be adequately protected pursuant to the terms set forth in the proposed Interim Order. Accordingly, the Debtors have satisfied the requirements under Section 363(c)(2)(A) and the use of Cash Collateral should be approved.

### C. The Proposed Adequate Protection Should Be Approved

14. Section 363(e) of the Bankruptcy Code provides "on request of an entity that has an interest in property used…or proposed to be used… by the [debtor in possession], the court…shall prohibit or condition such use… as it is necessary to provide adequate protection of such interest." 11 U.S.C. §363(e). Adequate protection is not expressly defined in the Bankruptcy Code, except by the implications of the examples of adequate protection listed in

Bankruptcy Code Section 361. *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. §361.

15. Determination of adequate protection is fact-specific and made on a "case by case basis." *Swedeland*, 16 F.3d at 564; *In re Columbia Gas Sys, Inc.*, 1992 WL 79323 at *2 (Bankr. D. Del. Feb. 18, 1992). The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. *Id.*; *In re Continental Airlines, Inc.* 154 B.R. 176, 180-81 (Bankr. D. Del. 1993).

16. The Debtors recognize that the Prepetition Lender is entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Collateral under the Loan Agreements to the extent there is a diminution in the value of the collateral from and after the Petition Date. The terms of the proposed Interim Order are designed to prevent diminution in value of the collateral by allowing the Debtors to use the Cash Collateral to preserve the estate and by providing the Prepetition Lender with replacement liens and a contingent administrative expense claim, thereby providing adequate protection to the Secured Lender.

### D. The Interim Order Should Be Granted

17. Bankruptcy Rule 1001(b)(2) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on

the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the debtor's estate pending a final hearing.

18. Pursuant to Bankruptcy Rule 1001(b)(2), the Debtors request the Court to conduct an expedited preliminary hearing on this Application and (a) authorize the Debtors to use the Cash Collateral in accordance with the Loan Agreements and the proposed Interim Order, to avoid immediate and irreparable harm to the value of the Collateral and the Debtors' estates and the Prepetition Lender's interests, and (b) schedule the Final Hearing to consider the relief requested herein on a final basis.

19. As set forth above, the Debtors have determined in their sound business judgment that there is an immediate need for use of Cash Collateral to preserve their estates and the Prepetition Lender's collateral. Without the use of Cash Collateral on an interim basis, the Debtors would be unable to preserve value of their estates and the Prepetition Lender's collateral.

## V. NOTICE

20. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Application has been provided to: (a) the United States Trustee; (b) those parties listed on the consolidated list of creditors holding the twenty (20) largest unsecured claims against the Debtors, as identified in their chapter 11 petitions; (c) counsel for ComVest; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## VI. CONCLUSION

21. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form annexed hereto as Exhibit A, (I) authorizing use of cash collateral; (II) granting the Prepetition Lender adequate protection; (III) scheduling the Final Hearing; and (IV) granting such other and further relief as the Court may deem appropriate.

June 23, 2010
Wilmington, Delaware

BAYARD, P.A.

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Phone: (302) 655-5000
Fax: (302) 658-6395

-and-

GERSTEN SAVAGE, LLP

Paul Rachmuth
600 Lexington Avenue
New York, New York 10022
Telephone: (212) 752-9700
Facsimile: (212) 980-5192

*Proposed Co-Counsel for the Debtors and Debtors in Possession*