**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re | Chapter 11 |
| CLEARPOINT BUSINESS RESOURCES, INC., *et al.*,1 | Case No. 10-12037 |
|  | (Joint Administration Requested) |
| Debtors. |  |

**APPLICATION UNDER 11 U.S.C. §§ 327(a) and 1107(b), FED.**
**R. BANKR. P. 2014 & 2016, AND BANKR. D. DEL. L.R. 2014-1 &**
**2016-1 TO APPROVE THE EMPLOYMENT AND RETENTION OF**
**GERSTEN SAVAGE, LLP AS ATTORNEYS FOR THE DEBTORS**

ClearPoint Business Resources, Inc. ("CPBR"), and its affiliated debtor, ClearPoint Resources, Inc. ("CPR"), and collectively with CPBR, the "Debtors" or "ClearPoint"), file this Application, pursuant to sections 327(a) and 1107(b) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to Approve the Employment and Retention of Gersten Savage LLP ("Gersten Savage" or the "Firm") as attorneys for the Debtors *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely upon and incorporate by reference (a) the Declaration of Christine Doelp in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings (the "Doelp Declaration"), filed contemporaneously herewith, and (b) the

---

1   The Debtors, along with the last four digits of their federal tax identification numbers, are: ClearPoint Business Resources, Inc. (4371) and ClearPoint Resources, Inc. (9869). The Debtors' mailing address for purposes of these cases is P.O. Box 3400. Easton, PA.  18045.

Declaration of Paul Rachmuth (the "Rachmuth Declaration"), attached hereto as **Exhibit A**, and represent as follows:

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C.  327(a).  This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested herein are sections 327(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## II. BACKGROUND

3.    On this date (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their business as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting that the Court jointly administer the Debtors' bankruptcy estates.

4.    An official committee of unsecured creditors has not been appointed in these Chapter 11 cases.  Further, no trustee or examiner has been requested or appointed in any of these Chapter 11 cases.

5.    A more complete discussion of the Debtors' background is contained in the Declaration of Christine Doelp filed contemporaneously with the bankruptcy petitions and incorporated herein by reference.

6.    ClearPoint was a provider of staffing services to businesses throughout the United States.   CPBR was formed in Delaware on July 21, 2004. CPR, a wholly-owned

subsidiary of CPBR, formerly known as Mercer Staffing, Inc. ("Mercer"), was formed in Delaware on January 1, 2005, as a holding company of its wholly owned subsidiaries consisting of, among others, Mercer Ventures Inc. ("MVI") and Allied Contract Services, LLC ("Allied"). At that time, the owners of MVI and Allied exchanged their respective ownership interests for the common stock of Mercer. MVI, a Pennsylvania corporation, has been in existence since 2001. Allied, a Pennsylvania limited liability company, was formed in 2004 to acquire certain assets of New Staff, Inc. Mercer acquired 100% of common stock of Quantum Resources Corporation ("Quantum") on July 29, 2005. Effective July 12, 2006, Mercer changed its name to ClearPoint Business Resources, Inc. and then after the merger (as described below), changed its name again to ClearPoint Resources, Inc.

7.    On February 12, 2007, CPR merged with a wholly-owned subsidiary of Terra Nova Acquisition Corporation ("Terra Nova"), whereby as a result of the merger (the "merger"), stockholders of CPR received 6,051,549 shares of Terra Nova common stock and CPR became a wholly-owned subsidiary of Terra Nova. A certain percentage of shares of common stock issued by Terra Nova to CPR's stockholders is being held in escrow to secure the indemnity rights of Terra Nova under the merger agreement. The merger agreement also provides for the stockholders to receive additional performance payments in three separate annual payments based on the share price of Terra Nova's common stock after the merger. The performance payments are payable in a combination of cash and shares. No such payments have been made to date and none are yet due. Upon the closing of the merger, Terra Nova changed its name to ClearPoint Business

Resources, Inc. and its securities became listed on The NASDAQ Capital Market (symbol: CPBR).

8.  Upon consummation of the merger, $30.6 million was released from a trust fund to be used by the combined company. After payments totaling approximately $3.3 million for professional fees and other direct and indirect costs related to the merger, the net proceeds amounted to $27.3 million. The merger was accounted for under the purchase method of accounting as a reverse acquisition in accordance with accounting principles generally accepted in the United States of America for accounting and financial reporting purposes. Under this method of accounting, Terra Nova was treated as the "acquired" company for financial reporting purposes. In accordance with guidance applicable to these circumstances, this merger was considered to be a capital transaction in substance. Accordingly, for accounting purposes, the merger was treated as the equivalent of CPBR issuing stock for the net monetary assets of Terra Nova, accompanied by a recapitalization. All historical share and per share amounts have been retroactively adjusted to give effect to the reverse acquisition of Terra Nova and related recapitalization.

9.  On February 23, 2007, CPBR acquired certain assets and liabilities of ALS. The purchase price of $24.4 million consisted of cash of $19 million, a note of $2.5 million at an interest rate of 7% (the "ALS Note), shares of CPBR common stock with a value of $2.5 million (439,367 shares) and the assumption of approximately $400,000 of current liabilities.

10.  Prior to year 2008, ClearPoint provided various temporary staffing services as both a direct provider and as a franchisor. During the year ended December

31, 2008, ClearPoint sold or subcontracted all of its traditional staffing contracts and transitioned its business model from a temporary staffing provider through a network of branch-based offices or franchises to a provider that managed clients' temporary staffing needs through its open Internet portal-based iLabor network. Under the new business model, ClearPoint acted as a broker for its clients and network of temporary staffing suppliers using iLabor.

11.     On April 26,2010 ClearPoint sold its iLabor Network to MDT Tek, LLC., an entity owned and/or controlled by ClearPoint's former Chief Executive Officer, Michael D. Traina, for a promissory note of $4,850,000, with payments of at least $50,000 per quarter beginning March 15, 2011 ending March 15,2018.

12.     ClearPoint currently derives its revenues from royalty payments related to client contracts which ClearPoint subcontracted or sold to other providers of temporary staffing services.  These consist of a perpetual franchise fee calculated at .75% of cash collected related to the sold contracts which averages approximately $35,000 per month and a subcontract fee of  $250,000 per month for 28 months which ends on December 31,2010.

13.     Due to a change in business environments, the Debtors entered into several agreements to transfer their business operations to several third parties. In exchange, the Debtors received royalty agreements, payment obligations and other contract rights (collectively, the "Contract Rights").  The revenue ClearPoint receives from the Contract rights is not sufficient to meet its obligations.

14.     ClearPoint's Board of Directors has considered the available alternatives, consulting with its advisors and has negotiated with ComVest Capital, LLC, ClearPoint's

secured lender ("ComVest"). As a result, it has determined that the best course of action for ClearPoint and its creditors and interest holders is for ClearPoint to voluntarily commence the instant chapter 11 Bankruptcy proceedings. Substantially contemporaneous with the commencement of the cases, the Debtors will move the Court for an Order authorizing it to conduct a sale of the Contract Rights.

15.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings is described in the Doelp Declaration.

### III. PROPOSED ATTORNEYS FOR THE DEBTORS

16.     The Debtors seek approval of the employment and retention of Gersten Savage as their attorneys in these bankruptcy cases, effective as of the Petition Date.

17.     Section 327(a) of the Bankruptcy Code provides: "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

18.     ClearPoint seeks to retain Gersten Savage for, in addition to others, the following reasons:

    a.    Gersten Savage has extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code. Gersten Savage has expertise, experience, and knowledge practicing before bankruptcy courts in this and other districts throughout the country. Gersten Savage's appearance before this Court for the matters in these Chapter 11 cases will be efficient and cost effective for the Debtors' estates.

    b.    Gersten Savage is a full-service law firm with experience and expertise in all other legal areas that will have an impact on the Debtors' day-to-day operations and their reorganization under Chapter 11 of the Bankruptcy Code.

19.     The Debtors contemplate that Gersten Savage will render specialized legal services to the Debtors as needed throughout these cases.  Generally, the legal services that Gersten Savage will render may be summarized, in part, as follows:

a.      Advising the Debtors of their rights, powers and duties as debtors in possession under the Bankruptcy Code;

b.      Performing all legal services for and on behalf of the Debtors that may be necessary or appropriate in the administration of these bankruptcy cases and the Debtors' businesses;

c.      Advising the Debtors concerning, and assisting in, the negotiation and documentation of financing agreements and debt restructurings;

d.      Counseling the Debtors in connection with the formulation, negotiation, and consummation of a possible sale of the Debtors' or their assets;

e.      Reviewing the nature and validity of agreements relating to the Debtors' interests in real and personal property and advising the Debtors of their corresponding rights and obligations;

f.      Advising the Debtors concerning preference, avoidance, recovery, or other actions that they may take to collect and to recover property for the benefit of the estates and their creditors, whether or not arising under Chapter 5 of the Bankruptcy Code;

g.      Preparing on behalf of the Debtors all necessary and appropriate applications, motions, pleadings, draft orders, notices, schedules, and other documents and reviewing all financial and other reports to be filed in these bankruptcy cases;

h.      Advising the Debtors concerning, and preparing responses to, applications, motions, complaints, pleadings, notices, and other papers that may be filed and served in these bankruptcy cases;

i.      Counseling the Debtors in connection with the formulation, negotiation, and promulgation of a plan of reorganization and related documents or other liquidation of the estates;

j.      Working with and coordinating efforts among other professionals to attempt to preclude any duplication of effort among those

professionals and to guide their efforts in the overall framework of Debtors' reorganization or liquidation; and

k.    Working with professionals retained by other parties in interest in this bankruptcy case to attempt to structure a consensual plan of reorganization, liquidation, or other resolution of the bankruptcy cases for Debtors.

20.    By separate application, the Debtors are seeking to retain and employ the law firm of Bayard, P.A., Attn: Jamie L. Edmonson, 222 Delaware Avenue, Suite 900, Wilmington, DE 19801 ("Bayard") as Delaware bankruptcy counsel to represent the Debtors in these Chapter 11 cases.  Gersten Savage and Bayard will make every effort to avoid and minimize duplication of services in these cases.

## IV. GERSTEN SAVAGE'S DISINTERESTEDNESS

21.    Gersten Savage was engaged by ClearPoint on May 7, 2010 to provide advice concerning financial restructuring, pre-bankruptcy and bankruptcy planning.

22.    Gersten Savage has expended significant resources over the past few months working with ClearPoint to prepare for the filing of these cases. Over the last few months, Gersten Savage has become intimately familiar with ClearPoint's business operations and financial affairs and many of the legal issues that will likely arise in the context of these Chapter 11 cases.  If ClearPoint is forced to retain counsel other than Gersten Savage, the Debtors' estates would incur additional expenses and delays associated with familiarizing new counsel with the intricacies of ClearPoint's financial affairs and business.

23.    To the best of ClearPoint's knowledge, information and belief, and except as set forth on Schedule A annexed to the Rachmuth Declaration, Gersten Savage has no connection with ClearPoint's creditors, parties in interest or affiliates, or attorneys or

accountants for any of them, the United States Trustee, or any person employed in the Office of the United States Trustee.

24. To the best of ClearPoint's knowledge based upon the Rachmuth Declaration, Gersten Savage does not represent or hold any interest adverse to the Debtors, their estates, creditors, equity security holders, or affiliates in the matters upon which Gersten Savage is to be engaged, and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code.

## V. COMPENSATION

25. Subject to Court approval, and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court, the Debtors propose to pay Gersten Savage its customary hourly rates in effect from time to time as set forth herein, plus reimbursement of actual, necessary expenses incurred by Gersten Savage on the Debtors' behalf. The following are Gersten Savage's currently hourly rates for work of this nature:

| | |
|---|---|
| Partners | $525 to $650 |
| Associates | $350 to $450 |
| Paraprofessionals | $250 |

26. Consistent with historical firm practice, the hourly rates set forth above are subject to adjustments on January 1st of each year (beginning January 1, 2011) to reflect economic and other conditions (subject to client approval and Court approval, if necessary).

27.     Gersten Savage will comply with the requirements of this Court, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules with respect to fee and expense applications of professionals employed by bankruptcy estates.

28.     Prior to the petition date, Gersten Savage received a retainer in the amount of $120,000 for work to be performed by the Firm.  $57,607.50 of the retainer was applied to prepetition invoices prior to the filing of the bankruptcy cases.  Accordingly, Gersten Savage currently holds $62,392.50 a retainer for the postpetition engagement. Gersten Savage was not a creditor of the Debtors when the bankruptcy petitions were filed.  Except as set forth herein, Gersten Savage has never been counsel for the Debtor, or otherwise received payment for services related thereto.

29.     No promises have been received by Gersten Savage, nor any partner, counsel, nor associate thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.  Gersten Savage has no agreement with any other entity to share with such entity any compensation received by Gersten Savage in connection with these cases.

30.     Gersten Savage's compliance with the requirements of sections 327, 329, 330, and 504 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and the Local Rules 2014-1 and 2016-1 is set forth in detail in the Rachmuth Declaration.

## VI. NOTICE

31.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases.  Notice of the Motion has been provided to:  (a) the United States Trustee; (b) those parties listed on the consolidated list of creditors holding the twenty (20) largest unsecured claims against the Debtors, as identified in their chapter 11

petitions; (c) counsel for ComVest; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## VII.    CONCLUSION

32.    No previous request for the relief sought herein has been made to this or any other Court.