IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>CLEARPOINT BUSINESS RESOURCES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-12037 (KG)<br><br>Re: Docket No. 73 |

ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' PURCHASED ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F), (K) AND (M) OF THE BANKRUPTCY CODE, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

This matter coming before the Court on the Debtors' *Motion for an Order Authorizing and Approving (I) the Debtors' Employment and Retention of John M. Cunningham, Inc. as Asset Broker; (II) the Terms of Compensation of John M. Cunningham, Inc.; (III) a Waiver of Local Rule 2016-2(d); (IV) the Procedures for the Sale of the Debtors' Assets; and (V) Scheduling a Hearing to Approve the Sale of the Purchased Assets* (the "Sale Motion") filed by the above-captioned debtors and debtors-in-possession (the "Debtors"); the Court having entered the order *Authorizing and Approving (I) the Debtors' Employment and Retention of John M. Cunningham, Inc. as Asset Broker; (II) the Terms of Compensation of John M. Cunningham, Inc.; (III) a Waiver of Local Rule 2016-2(d); (IV) the Procedures for the Sale of the Debtors' Assets; and (V) Scheduling a Hearing to Approve the Sale of the Purchased Assets* [Docket No. 98] (the "Bid Procedures Order"); the Debtors having agreed to an Asset Purchase Agreement, a

---

[1] The Debtors, along with the last four digits of their federal tax identification numbers, are: ClearPoint Business Resources, Inc. (4371) and ClearPoint Resources, Inc. (9869). The Debtors' mailing address for purposes of these cases is P.O. Box 3400. Easton, PA. 18045.

true and correct copy of which is attached hereto as Exhibit "A" (the "APA"), with the Purchaser (as defined in the APA) who was determined by the Debtors as having submitted the highest or otherwise best bid for the Purchased Assets (as defined in the APA) pursuant to the APA; there being no objections to the Sale Motion, or any objections thereto having been withdrawn, waived, settled or overruled; the hearing on the Sale Motion (the "Sale Hearing") having been held on August 26, 2010; all interested parties having been duly served with appropriate notice and having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; the Court being otherwise duly informed in the premises[2];

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Sale Motion are Sections 105(a), 363(b), (f), (k), (m) and (n), and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B. The Debtors have conducted a thorough and adequate search for potential purchasers for the Purchased Assets, and the Sale was conducted in accordance with the requirements of the Bid Procedures Order, as reflected in testimony, offers of proof by counsel or other evidence produced at the Sale Hearing.

C. In accordance with the terms of the Bid Procedures Order, the Debtors served Notice of the Sale Hearing (as defined in the Bid Procedures Order) on (a) the U.S. Trustee; (b) all parties known to be asserting a lien on any of the Debtors' assets; (c) non-debtor counterparties to the Assigned Contracts, if any; (d) all entities known to have expressed an interest in acquiring any of the Purchased Assets; (e) the United States Attorney's office; (f) all

---

[2] All capitalized terms not defined in this Order having the same meanings as in the Motion.

state attorneys general in states in which the Debtors do business; (g) various known federal and state agencies and authorities asserting jurisdiction over the Purchased Assets, including the Internal Revenue Service; and (h) all other parties that have filed a notice of appearance and demand for service of papers in the Debtors' chapter 11 cases under Bankruptcy Rule 2002 as of the date of the Bid Procedures Order. In light of such service, proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, and the transaction contemplated by the APA and this Order (the "Transaction" or the "Sale"), including, without limitation, the assumption and assignment of the Assigned Contracts, has been provided in accordance with Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules. Such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, or the Transaction, including, without limitation, the assumption and assignment of the Assigned Contracts, is or shall be required.

D. As demonstrated by (i) the testimony and/or other evidence proffered at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have conducted the sale process fairly and openly in a manner reasonably calculated to produce the highest or otherwise best offer for the Purchased Assets under the circumstances and in compliance with the Bid Procedures Order. The highest or otherwise best offer received by the Debtors for the Purchased Assets at or before the Sale Hearing was the offer by ComVest Capital, LLC, the Purchaser, as such offer is reflected in the APA.

E. Approval of the APA and consummation of the Transaction, including the sale of the Purchased Assets at this time, is in the best interests of the Debtors, their creditors, estates, and other parties in interest. The Debtors have established that strong business reasons exist for (i) selling the Purchased Assets outside the ordinary course of business and outside a plan and (ii) the assumption and assignment of the Assigned Contracts as specified in the APA.

F. The Debtors have demonstrated that sale of the Purchased Assets and consummation of the Sale reflects the exercise of the Debtors' sound business judgment.

G. Upon review of the evidence presented and proffered, the Court finds that the APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. The terms of the APA are fair and reasonable. Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the APA or any part of the Transaction to be avoided, or for the imposition of costs and damages against the Purchaser under Section 363(n) of the Bankruptcy Code.

H. Upon review of the evidence presented or proffered, the Court finds that the Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the sale of the Purchased Assets pursuant to the APA at any time after the entry of this Order.

I. Except as otherwise set forth herein, the Debtors are the sole and lawful owner of the Purchased Assets. Subject to certain exceptions set forth herein, the Debtors may sell the Purchased Assets to the Purchaser free and clear of all liens, claims, encumbrances and interests ("Liens") in accordance with, and to the extent permitted by, section 363(f) of the Bankruptcy Code. As a condition of purchasing the Purchased Assets, the Purchaser requires that the Purchased Assets be sold free and clear of all Liens, except those explicitly and expressly assumed by the Purchaser in the APA (which shall be limited to the Assumed Liabilities) (as defined in the APA). Accordingly, the transfer of the Purchased Assets to the Purchaser is or will be a legal, valid and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest in and to the Assets, free and clear of all Liens, except those explicitly and expressly assumed by the Purchaser in the APA. Except as otherwise expressly set forth in the APA, the transfer of the Purchased Assets to Purchaser does not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business and/or the ownership of the Purchased Assets prior to the Closing.

J. Except as set forth herein, non-debtor parties holding valid Liens in or with respect to the Assets, including parties to Assigned Contracts, who did not object to the Sale Motion or those whose objections were withdrawn are deemed to have consented to the sale of the Purchased Assets free and clear of their Liens in or with respect to the Purchased Assets pursuant to sections 363(f)(2) and 365 of the Bankruptcy Code.

K. Purchaser is a secured creditor of the Debtors, holding valid liens, claims, interests and encumbrances in, on and against the Debtors, their estates and the Purchased Assets arising under the Revolving Credit and Term Loan Agreement between the Debtors and the Purchaser. The credit bid by the Purchasers pursuant to the APA is valid and proper pursuant to the Bid Procedures Order and sections 363(b) and (k) of the Bankruptcy Code.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

The Sale Motion is GRANTED by this Order and all objections thereto which have not been waived, withdrawn, or settled as reflected on the docket of these cases or the record of the Sale Hearing are hereby overruled.

### Approval of the Asset Purchase Agreement

1. The APA, as received by the parties in interest and presented to the Court, and all of the terms and conditions thereof, as may be amended, including as may be amended by this Order, are hereby approved.

2. Pursuant to Sections 363(b), (f) and (k) of the Bankruptcy Code, the Debtors are authorized to consummate the sale of the Purchased Assets pursuant to and in accordance with the terms and conditions of the APA and this Order.

3. The Debtors are empowered and directed to perform under, consummate and implement the APA, and are authorized and directed to take all other actions as are necessary to effectuate the Transaction, including exercising reasonable efforts in executing and delivering any additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the

purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession the Purchased Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

### Transfer of Purchased Assets Free and Clear of Liens

4. At Closing, Purchaser shall acquire the Purchased Assets in consideration of the Credit Bid. Upon the Closing, the Purchased Assets shall be transferred, and title passed, to the Purchaser free and clear of all Liens other than the Assumed Liabilities (as defined in the APA).

5. Except for the Assumed Liabilities (as defined in the APA) or as otherwise expressly provided for in the APA and this Order, the Purchaser shall not have any liability or responsibility for any liability, commitment or other obligation of and claims against the Debtors arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Purchaser shall not be liable for any liabilities of and obligations against the Purchased Assets, Debtors or any of their predecessors or affiliates including, but not limited to, liabilities whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, whether relating to or arising out of the Business (as defined in the APA), the Excluded Purchased Assets (as defined in the APA) or the Purchased Assets or otherwise, other than the Assumed Liabilities regardless of when such obligations become due and payable, provided, however, that the Purchaser shall assume upon the Closing the Carve Out Expenses (as defined in the *Final Order (I) Authorizing Use of Cash Collateral; (II) Granting the Prepetition Lenders Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Final Cash Collateral Order") (Docket No. 62), to the extent such Carve Out Expenses were incurred prior to or as a result of the Closing (with the exception of any professional fees described in section 12(c)(ii) of the Final Cash Collateral Order), regardless of when such Carve Out Expenses become due and payable.

6.  Except as expressly permitted or otherwise specifically provided by the APA or this Order, all parties holding Liens of any kind or nature whatsoever against Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or un-matured, known or unknown, liquidated or unliquidated, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred and estopped from asserting such persons' or entities' Liens against the Purchaser, their successors or assigns, their Purchased Assets or assets. But for the Assumed Liabilities, Purchaser shall not be liable for any claims of any kind or nature, whether prepetition or postpetition, matured or un-matured, fixed or contingent, liquidated or unliquidated, known or unknown, against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor liability with respect to same, regardless of when such claims become due and payable.

7.  Pursuant to sections 365(b), (c) and (f) of the Bankruptcy Code, and subject to this Order, the Debtors are authorized to assume and assign the Assigned Contracts as identified in the APA.

8.  Upon Closing, the Purchaser shall assume full responsibility and liability for all Assigned Contracts, and Debtors shall have no further responsibility, financial or otherwise, under any Assigned Contracts for (i) any monetary or non-monetary defaults, breaches or other damages associated with the Assigned Contracts, arising or accruing subsequent to the Closing, or (ii) any Assumed Liabilities.

9.  To the extent that any counter party to an Assigned Contract asserts that such Assigned Contract is executory, such party shall be required to file within twenty (20) days of the entry of this Order an objection (a) to the assumption and assignment of such Assigned Contract or (b) asserting that a cure amount is payable with respect to such Assigned Contract. In the event no such objection is filed or if such an objection is overruled by the Court, the Assigned Contract shall be deemed assigned to the Purchaser. If such an objection is filed and

the Court determines that such Assigned Contract is executory and/or that a cure amount is payable with respect thereto, the Purchaser shall have twenty (20) days from entry of the Court's order containing such finding to (a) pay such cure amount and provide adequate assurance of future performance or (b) elect to remove such Assigned Contract from the Sellers Assigned Contract Schedule (as defined in the APA).

10. Subject to the provisions of paragraph 9 of this Order, (a) pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred from raising or asserting against the Purchaser or the Debtors any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing; (b) payment of any cure amount by the Purchaser shall be deemed to discharge the Debtors' obligation to (i) cure, or provide adequate assurance that the Debtors will promptly cure, any defaults under the Assigned Contracts and (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, any non-debtor party to the Assigned Contracts for any actual pecuniary loss resulting from any default under the Assigned Contracts; (c) the Purchaser shall be deemed to have provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code; and (d) the Assigned Contracts shall be deemed assigned to the Purchaser as of the Closing Date and shall be in force, effective, and no defaults shall exist thereunder, monetary, or non-monetary.

11. In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assigned Contracts to the Purchaser (i) the Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assigned Contracts shall remain in full force and effect for the benefit of the Purchaser notwithstanding any provision in any such Assigned Contract or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) no Assigned Contract may be terminated, or the rights of any party modified in

any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the Transaction.

12. The transfer of the Purchased Assets to the Purchaser pursuant to the APA and this Order constitutes a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with the same right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens of any kind or nature whatsoever (but for the Assumed Liabilities) notwithstanding any requirement for approval or consent by any entity (as defined in Section 101(15) of the Bankruptcy Code).

13. The transfer of the Purchased Assets to the Purchaser pursuant to the APA is an exchange for consideration by the Purchaser that constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

### Additional Provisions

14. On the Closing Date of the Transaction, each of the Debtors' creditors, secured or otherwise, are authorized to execute such documents and take all other actions as may be necessary to release their liens, claims or encumbrances in or against the Purchased Assets, if any, as such liens, claims or encumbrances may have been recorded or may otherwise exist.

15. The automatic stay provisions of section 362 of the Bankruptcy Code are modified and vacated to the extent necessary to implement the terms and conditions of this Order. If any person or entity asserting a security interest has filed financing statements, mortgages, construction liens, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens with respect to the Purchased Assets, and has not delivered to the Debtors and/or the Purchaser prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens which the person or entity has with respect to any of the Purchased Assets then (a) the Debtors or the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased

Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens in or against the Purchased Assets of any kind or nature whatsoever.

16. This Sale Order shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets. Each and every federal, state, and local governmental agency or department or office is hereby authorized to accept this Sale Order and any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the APA.

17. This Court shall retain exclusive jurisdiction to implement and effectuate the provisions of this Order and the APA and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the APA and any subsequent agreement as required to be entered into between the Debtors and the Purchaser pursuant to this Order, or the rights and duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute concerning the transfer of the Purchased Assets free and clear of Liens.

18. Nothing contained in any plan confirmed in these cases or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the APA or the terms of this Order.

19. The Transaction contemplated by the APA is undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction as to the Purchaser, except to the extent such

authorization is duly stayed pending such appeal prior to such consummation. The evidence presented or proffered has demonstrated that the Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

20. The terms and provisions of this Order shall be binding in all respects upon and shall inure to the benefit of, the Debtors, their successors and assigns, if any, their estates and their creditors, the Purchaser and their affiliates, successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Liens in or against such Purchased Assets, notwithstanding any subsequent appointment of any Chapter 11 or Chapter 7 trustee(s), upon which such terms and provisions likewise shall be binding.

21. Based upon the evidence presented or proffered, it has been determined that the Purchaser shall not be deemed to (a) be the successor in interest of the Debtors; (b) have, de facto or otherwise, merged with or into the Debtors; or (c) be a continuation of the Debtors. Neither the purchase of the Purchased Assets by Purchaser nor the Transaction contemplated hereby will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to Debtors' business within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor or environmental law, rule or regulation or under any products liability law or doctrine with respect to Debtors' liabilities under such laws, rules, regulations and doctrines.

22. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety. Likewise, all of the provisions of this Order are non-severable and mutually dependent. In the event there are any inconsistencies between this Order and the Sale Motion or the APA, the terms of this Order shall control.

23. The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing to be signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided

that any such modification, amendment or supplement does not has a material adverse effect on the Debtors' estates or the creditors of those estates.

24. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a), and the fourteen (14) day stay otherwise in effect under Bankruptcy Rules 6004 and 6006 is hereby waived and dispensed with, and this Order shall be effective immediately upon entry thereof..

25. Notwithstanding any other provision in this Order, upon assumption and assignment of the Assigned Contracts, the Purchaser shall assume and be responsible for performing all obligations and liabilities arising under or relating to the Assigned Contracts from and after the Closing Date.

26. GrayRobinson P.A. ("GRPA") claims a charging lien upon the Debtors' claims against Temporary Services Insurance, Ltd. (the "TSIL Claims"). The Debtors dispute GRPA's claim of a charging lien upon the TSIL Claims. Notwithstanding any other provision to the contrary in this Order or in the APA: this Order (a) shall not be deemed a finding that any lien asserted by GRPA upon the TSIL Claims is or is not valid and/or enforceable and (b) shall have no impact upon any liens that GRPA may have upon the TSIL Claims, which liens shall, to the extent valid prior to the Closing, remain attached to TSIL Claims following the Closing; and GRPA may continue to assert the lien.

27. Notwithstanding anything to the contrary herein or in the APA, this Order shall not release, discharge or otherwise impact the liens asserted by (a) Sunz Insurance Company ("Sunz") with respect to the letter of credit issued to Sunz by Team Capital Bank on behalf of the Debtors or (b) Manufacturers and Traders Trust Company ("M&T") with respect to the Pre-Closing Accounts, as such term is defined in the *Debtors' Motion for Relief from Stay to Allow M&T to Collect Certain Accounts* (Docket No. 68), which liens shall remain attached to such assets following the Closing to the same extent that such liens are attached thereto prior to the Closing.

28. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

29. The findings of fact set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

Date: August 26, 2010

The Honorable Kevin Gross
United States Bankruptcy Judge